1

2

3

4

5

6                     IN THE UNITED STATES DISTRICT COURT

7

8                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   ADOBE SYSTEMS INC,

11              Plaintiff,                          No. C 14-00388 WHA

12        v.

13   ACCOLADIAN RESOURCES, LLC;          **ORDER DENYING**
     VERN CAMERON, an individual and     **MOTION TO DISMISS AND**
14   dba ACCOLADIAN RESOURCES,           **VACATING HEARING**
     WWW.ACCOLADIANS.COM, and
15   WWW.ACCOLADIAN.COM, and
     DOES 1–10, inclusive,
16
                Defendants.
17   _____/

18

19                             **INTRODUCTION**

20        In this copyright and trademark infringement action, defendants move to dismiss for

21   lack of personal jurisdiction and failure to state a claim for which relief can be granted.  For the

22   reasons stated below, defendants' motion is **DENIED**.  The July 31 hearing is **VACATED**.

23                              **STATEMENT**

24        Plaintiff Adobe Systems Inc. is a Delaware corporation having its principal place of

25   business in San Jose (Compl. ¶ 8).  Defendant Accoladian Resources, LLC, is a Florida

26   corporation with its principal place of business in West Palm Beach (*id*. at ¶ 13).  Accoladian

27   operates a commercial website through which Internet consumers can purchase computer

28   software.  Defendant Vern Cameron is an individual who does business as "Accoladian

     Resources" and through the company's websites.  Cameron is a resident of West Palm Beach.

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

1   Adobe alleges that through Accoladian's websites, www.accoladians.com and

2   www.accoladian.com, defendants sell and distribute unauthorized copies of Adobe software

3   to consumers, including those located in California (*id*. at ¶¶ 13, 18).  Adobe alleges that its

4   software, specifically Adobe® Acrobat® XI Professional and other titles, were pirated by

5   defendants "at least in or around November 2013" (Compl. ¶¶ 1–4).  Adobe also alleges that

6   defendants use images identical or confusingly similar to Adobe's trademarks (*ibid.*).

7   In January 2014, Adobe filed this action for copyright infringement pursuant to 17 U.S.C.

8   101, and trademark infringement and false advertising pursuant to the Lanham Act,

9   15 U.S.C. 1051.

10   On June 16, defendants moved to dismiss the complaint for lack of personal jurisdiction

11   and for failure to state a claim for which relief can be granted.  Adobe filed a timely opposition.

12   Defendants' reply brief was due July 7, but was not filed until July 23 (Dkt. No. 37).  Pursuant to

13   Local Rule 7-3, "[t]he reply to an opposition must be filed and served not more than 7 days after

14   the opposition was due."  Due to this tardiness, which was without good cause, the reply brief is

15   **STRICKEN**.

16                                    **ANALYSIS**

17   **1.     WHETHER THE COURT MAY EXERCISE**
         **PERSONAL JURISDICTION OVER ACCOLADIAN.**

18

         **A.     Legal Standards.**

19

20   Defendants move to dismiss the complaint for lack of personal jurisdiction pursuant to

21   Federal Rule of Civil Procedure 12(b)(2).  When a nonresident defendant raises a challenge to

22   personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper, but

23   "[u]ncontroverted allegations in the plaintiff's complaint must be taken as true [and] [c]onflicts

24   between the parties over statements contained in affidavits must be resolved in the plaintiff's

25   favor."  *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (internal citations omitted).

26   According to Rule 4(k)(1)(A), where, as here, no federal statute authorizes personal

27   jurisdiction, the district court applies the law of the state in which the court sits.  California's

28   long-arm statute, California Code of Civil Procedure Section 410.10, "is coextensive with

     federal due process requirements, [so] the jurisdictional analyses under state law and federal due

United States District Court

For the Northern District of California

1  process are the same." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th

2  Cir. 2004).  For a court to exercise personal jurisdiction over a nonresident defendant consistent

3  with due process, that defendant must have "certain minimum contacts" with the relevant forum

4  "such that the maintenance of the suit does not offend 'traditional notions of fair play and

5  substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting

6  *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

7                    **B.    General Jurisdiction.**

8         Adobe does not argue that Accoladian or Vern Cameron are subject to general

9  jurisdiction in California.  For general jurisdiction, "[t]he standard is met only by 'continuous

10  corporate operations within a state [that are] thought so substantial and of such a nature as to

11  justify suit against [the defendants] on causes of action arising from dealings entirely distinct

12  from those activities.'"  *King v. American Family Mut. Ins. Co.*, 632 F.3d 570, 579 (9th Cir.

13  2011) (quoting *International Shoe*, 326 U.S. at 318).

14         Defendants operated an interactive website which California residents could reach.

15  Our court of appeals has stated, however, that "[i]f the maintenance of an interactive website

16  were sufficient to support general jurisdiction in every forum in which users interacted with the

17  website, 'the eventual demise of all restrictions on the personal jurisdiction of state courts'

18  would be the inevitable result." *CollegeSource, Inc. v. AcademyOne, Inc*., 653 F.3d 1066,

19  1075–76 (9th Cir. 2011) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294

20  (1980)).

21         In sum, Accoladian's activities do not "approximate physical presence" in California, so

22  Accoladian is not subject to general jurisdiction in California.

23                    **C.    Specific Jurisdiction.**

24         Adobe argues that Accoladian has sufficient "minimum contacts" with California arising

25  out of, or related to, its actions.  This order agrees.

26         Specific jurisdiction is analyzed under a three-prong test:

27                    (1) The non-resident defendant must purposefully direct his
                    activities or consummate some transaction with the forum or
28                    resident thereof; or perform some act by which he purposefully
                    avails himself of the privilege of conducting activities in the

3

United States District Court

For the Northern District of California

1   forum, thereby invoking the benefits and protections of its laws;
2   (2) the claim must be one which arises out of or relates to the
    defendant's forum-related activities; and (3) the exercise of
    jurisdiction must comport with fair play and substantial justice,
3   *i.e.*, it must be reasonable.

4   *Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th. Cir. 1987).

5   Adobe bears the burden of satisfying the first two prongs. *Sher v. Johnson*, 911 F.2d 1357, 1361

6   (9th Cir. 1990). If Adobe does so, the burden then shifts to Accoladian to set forth a

7   "compelling case" that the exercise of jurisdiction would not be reasonable. *Burger King Corp.*

8   *v. Rudzewicz*, 471 U.S. 462, 476–78 (1985). In order to determine whether specific jurisdiction

9   exists, this order will now apply the three pronged test, as set out by our court of appeals.

10                    *(1)      Purposeful Direction.*

11          The first prong asks whether defendants "purposefully direct[ed] [their] activities or

12   consummat[ed] some transaction with the forum or resident thereof." *Schwarzenegger*, 374 F.3d

13   at 802. In copyright and trademark infringement actions, the Ninth Circuit has set forth a

14   "purposeful direction" analysis. *Love v. Assoc. Newspapers, Ltd.*, 611 F.3d 601, 609 (9th Cir.

15   2010). District courts must "inquire whether a defendant 'purposefully direct[s] his activities'

16   at the forum state, applying an 'effects' test that focuses on the forum in which the defendants'

17   actions were felt, whether or not the actions themselves occurred within the forum." *Yahoo!*

18   *Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc). The

19   "effects" test, which derives from the Supreme Court's decision in *Calder v. Jones*, 465 U.S.

20   783 (1984), requires that "the defendant allegedly must have (1) committed an intentional act,

21   (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be

22   suffered in the forum state." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124,

23   1128 (9th Cir. 2010). This order, therefore, addresses the three requirements of the *Calder*

24   "effects" test in turn.

25          *First*, the complaint alleges that "defendants through Internet sites, including but not

26   necessarily limited to www.accoladians.com and www.accoladian.com (the "Websites")

27   have advertised, offered for sale, and distributed unauthorized copies of Adobe software

28   (the "Unauthorized Software Product") including, but not limited to Adobe® Acrobat® XI

                                            4

Professional (the "Adobe Software") at least in or around November 2013" (Compl. ¶ 3). These acts constitute "intentional acts" and satisfy the first prong of the test.

*Second*, this order holds that Accoladian expressly aimed its actions at the forum state. Our court of appeals has held that "the 'expressly aimed' prong of the purposeful direction test can be met where a plaintiff alleges that the defendant individually targeted him by misusing his intellectual property on the defendant's website for the purpose of competing with the plaintiff in the forum." *Love*, 611 F.3d at 609 n.4 (citing *Brayton Purcell*, 606 F.3d at 1129–30).

In *Brayton Purcell*, our court of appeals found the express aiming prong of the purposeful direction test satisfied where a nonresident defendant law firm plagiarized copyrighted material from the forum plaintiff law firm's website and republished the material. *Id*. at 1129–31. Because both firms practiced in the relatively specialized field of elder abuse law, our court of appeals concluded that the nonresident defendant "knew of [the plaintiff's] existence, targeted [the plaintiff's] business, and entered direct competition with [the plaintiff]." *Id*. at 1130.

Thus, the question presented is whether Accoladian engaged in wrongful conduct intended to compete with Adobe in California. Defendants claim that their actions were not aimed at California. The motion to dismiss states that "defendants directed no activities at California, let alone Northern California. Defendant Accoladian is a small-time operation that runs charity campaigns for schools in South Florida. Nothing Accoladian does is directed at California" (Br. 12). And yet, defendants' motion to dismiss concedes that "[t]he only arguable 'contacts' are a handful of sales made by Accoladian in California through a passive website located in Florida" (Br. 10). By defendants' own admission they sold the allegedly infringing product to California residents.

The complaint goes even further in alleging that defendants competed with Adobe in California:

> [Accoladian] transacts business as www.accoladians.com and www.accoladian.com and does business in California through payment processors located in the State of California. On information and belief, [d]efendants also offer and distribute the [u]nauthorized [s]oftware [p]roduct in the State of California, among other places.

5

United States District Court

For the Northern District of California

(Compl. ¶ 13).  Plaintiff has satisfied the "express aiming" requirement by alleging that defendant "misus[ed] [plaintiff's] intellectual property on the defendant[s'] website for the purpose of competing with the plaintiff in the forum." *Love*, 611 F.3d at 609 n.4.

*Third*, the complaint alleges that defendants inflicted "harm that defendants kn[ew] [was] likely to be suffered in the forum state." *Brayton Purcell*, 606 F.3d at 1128 (quoting *Yahoo!*, 433 F.3d at 1206).  The complaint alleges economic loss based on defendants' use of misappropriated software to compete for customers.  Our court of appeals has held "that a corporation incurs economic loss, for jurisdictional purposes, *in the forum of its principal place of business*." *CollegeSource, Inc.*, 653 F.3d at 1079 (emphasis added).  Because Adobe has its principal place of business in San Jose, defendants would have known that the harm Adobe would suffer would be in the forum state.

### (2)    *Claim Arising out of, or Related to, Forum Activities.*

The complaint alleges copyright infringement, trademark infringement, and false advertising claims arise from the actions of defendants in "sell[ing] and distribut[ing] unauthorized, restricted downloaded copies of Adobe Software and supplying unauthorized, restricted licenses to customers" (Compl. ¶ 16).  Defendants once again argue that they have "done little to reach out to the forum state" (Br. 13).  As explained above, this order rejects defendants' contentions and therefore concludes that Adobe's claims arise out of defendants' activities in California.

### (3)    *Reasonableness.*

Because Adobe has made a prima facie case that the assertion of specific jurisdiction over Accoladian is constitutional, the burden shifts to defendants to "present a compelling case" that the exercise of jurisdiction would be unreasonable and therefore violate due process. *Burger King*, 471 U.S. at 477–78.  A court must consider seven factors in determining whether the exercise of jurisdiction comports with "fair play and substantial justice":

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's

interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Dole Food Co. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002).

Defendants make the following arguments based on the burden they would face in litigating in California:

> Since any alternative forum would be within the United States, any conflicting sovereignty interests are best accommodated through choice-of-law rules rather than through jurisdictional rules. There are no compelling policy interests implicated by this run-of-the-mill breach of contract case. . . .  Fourth, California does not have a special interest in this run-of-the-mill commercial case against a Florida entity mainly dedicated to servicing Florida schools and charities. . . .  Finally, Florida is a far more convenient and efficient forum for resolving this dispute than is California.  All of [d]efendants' employees are located in Florida.  The subject transactions that took place upstream from Defendant Accoladian all took place in Florida.  Even Adobe's witnesses, are likely located in Florida.  In brief, litigating this case in California would present a substantially greater burden for all the parties and witnesses involved.

(Br. 13–14).

Adobe, for its part, explicitly rejects "the notion that there are any other witnesses located in Florida" (Opp. 19).  Adobe lists several other reasons why it believes jurisdiction should be retained:  (1) [t]he Northern District of California has mandatory e-filing procedures that lessen the burden of filing from outside the district; (2) there is no known state sovereignty conflict; (3) California has a significant interest in the litigation because it is the principal place of business of Adobe; and (4) re-filing of this action in Florida would require the duplication of proceedings (Opp. 18–19).

As to the availability of a "suitable alternative forum," defendants suggest that "Florida is a far more efficient forum for resolving this dispute than is California" (Br. 14).  "Whether another reasonable forum exists becomes an issue only when the forum state is shown to be unreasonable."  *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 929 n.19 (9th Cir. 2011).  Defendants have not made that showing.

Upon consideration of all of the *Burger King* factors, this order holds that defendants have not met their burden of showing that the exercise of jurisdiction in this action would be unreasonable.  Thus, defendants' motion to dismiss for lack of personal jurisdiction is **DENIED**.

**United States District Court**
For the Northern District of California

### 2.   WHETHER THE COURT MAY EXERCISE PERSONAL JURISDICTION OVER CAMERON.

Defendants argue that even if personal jurisdiction exists over Accoladian Resources, LLC, this Court does not have jurisdiction over Cameron as an individual.  While a court may not have jurisdiction over all members or employees of a corporation solely on the basis of that corporation's activities, there are key exceptions.  "The corporate form may be ignored in two cases:  (1) where the corporation is the agent or alter ego of the individual defendant; or (2) by virtue of the individual's control of, and direct participation in the alleged activities."  *Wolf Designs, Inc. v. DHR & Co.*, 322 F.Supp.2d 1065, 1072 (C.D. Cal. 2004) (Judge S. James Otero) (internal citations omitted).

Here, Adobe alleges that Cameron is not just an employee or member of Accoladian Resources LLC and its associated websites, but that he is in fact "doing business as Accoladian Resources" and these websites.  Adobe further alleges that "Cameron also offers and distributes the [u]nauthorized [s]oftware [p]roduct in the State of California," and that "Cameron profited directly from the infringing activity . . . " (Compl. ¶ 14).  In support of these allegations, Adobe submitted in its opposition brief Domain Name System records which show that Cameron is listed as the technical, billing, and administrative contact for the websites www.accoladian.com and www.accoladians.com (Opp. Exh. A at 3, 8).  Cameron's own declaration states that Accoladian does business "primarily though its website Accoladians.com," and that he is the "managing partner of Accoladian Resources, LLC" (Cameron Decl. ¶¶ 1–2).

Based on the allegations of the complaint and the parties' declarations, Cameron appears to have been both the moving force behind Accoladian's infringement, as well as a direct participant in the alleged activities.  Accordingly, defendants' motion to dismiss Cameron for lack of personal jurisdiction is **DENIED**.

### 3.   FAILURE TO STATE A CLAIM.

Alternatively, defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), alleging that the complaint is "plainly boilerplate" and "omit[s] any true factual allegations that could possibly pertain to the [d]efendants named here" (Br. 16).

**United States District Court**
For the Northern District of California

1       To survive a motion to dismiss, a pleading must contain sufficient factual matter,

2 accepted as true, to state a claim for relief that is plausible on its face.  Lack of a cognizable legal

3 theory or mere conclusory allegations, however, will result in dismissal.  *Ashcroft v. Iqbal*,

4 556 U.S. 662, 663 (2009).

5                **A.**       **Copyright Infringement.**

6       Defendants argue that the complaint fails to state a claim for copyright infringement.

7 To state a valid claim, Adobe must allege:  (1) ownership of a valid copyright and (2) copying of

8 protected expression by the alleged infringers.  *See Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499

9 U.S. 340, 361 (1991).  Here, Adobe has pled a plausible claim for copyright infringement:

> 10     Defendants, through Internet sites, including but not necessary
> 11     limited to www.accoladians.com and www.accoladian.com . . .
> have advertised, offered for sale, and distributed unauthorized
> 12     copies of Adobe software . . . including, but not limited to Adobe®
> Acrobat® XI Professional . . . at least in or around November of
> 13     2013.
>
> 14               *           *           *
> 15     Defendants' use began long after Adobe's adoption and use of
> Adobe's [t]rademarks, and after Adobe obtained the copyright and
> 16     trademark registration alleged above.

17 (Compl. ¶¶ 3, 18).  Accordingly, defendants' motion to dismiss the copyright infringement claim

18 is **DENIED**.

19                **B.**       **Trademark Infringement.**

20       Next, defendants move to dismiss Adobe's claim for trademark infringement pursuant to

21 Rule 12(b)(6).  To plead trademark infringement under the Lanham Act, plaintiff must allege

22 that defendants' commercial use of a "reproduction, counterfeit, copy, or colorable imitation of a

23 registered mark" is likely to "cause confusion."  15 U.S.C. 1114(1).  The complaint makes the

24 following allegations regarding trademark infringement:

> 25     Defendants use, among other things, the [w]ebsites to advertise,
> sell and distribute unauthorized, restricted downloaded copies of
> 26     Adobe [s]oftware and supplying unauthorized, restricted licenses
> to consumers.
>
> 27               *           *           *
> 28     Defendants also use images confusingly similar or identical to
> Adobe's [t]rademarks, to confuse consumers and aid in the

United States District Court

For the Northern District of California

> promotion and/or advertising of their unauthorized products.
> Defendants' use of Adobe's [t]rademarks includes importing,
> advertising, displaying, distributing, selling and/or offering to
> sell unauthorized copies of the Adobe [s]oftware.  Defendants'
> use began long after Adobe's adoption and use of Adobe's
> [t]rademarks, and after Adobe obtained the copyright and
> trademark registration alleged above.  Neither Adobe nor any
> authorized agents have consented to Defendants' use of the Adobe
> [t]rademarks.
>
> Defendants' actions have confused and deceived, or threatened to
> confuse and deceive, the consuming public concerning the source
> and sponsorship of the unauthorized copies of the Adobe
> [s]oftware offered and distributed by [d]efendants.  By their
> wrongful conduct, [d]efendants have traded upon and diminished
> Adobe's goodwill.

(Compl. ¶¶ 16–19).  The complaint alleges that Adobe had registered trademarks that defendants imitated or reproduced in order to cause confusion among the consuming public.  Accordingly, Adobe has pled a plausible claim of trademark infringement.  Defendants' motion to dismiss is DENIED.

### C.     False Advertising.

Defendants move to dismiss Adobe's false advertising claim pursuant to Rule 12(b)(6). Section 43(a) of the Lanham Act forbids the use of false designations of origin and false descriptions or representations in the advertising and sale of goods and service.  *Smith v. Montoro*, 648 F.2d 602, 605 (9th Cir. 1981).  Section 1125(a) of Title 15 of the United States Code provides:

> Any person who shall affix, apply, or annex, or use in connection
> with any goods or services a false designation of origin or
> representation and shall cause such goods to enter into commerce
> shall be liable to a civil action by any person who believes that he
> or she is likely to be damaged by the use of such false designation
> or representation.

The complaint alleges that defendants made false statements in commercial advertisements through the unauthorized use of Adobe's software products (Compl. ¶ 32). Defendants allegedly "failed to disclose" that the unauthorized products they sold were restricted by Adobe's license.  These false statements were "inaccurate" and "likely to mislead or confuse consumers."  Additionally, the complaint states:

> Adobe is informed and believes that the statements actually
> deceived or have the tendency to deceive a substantial segment of

United States District Court

For the Northern District of California

consumers into purchasing the [u]nauthorized [s]oftware [p]roduct for which the consumer is not legally qualified to obtain and/or use.

(Compl. ¶ 33). Adobe has adequately pled a claim for relief for false representation in advertising/promotion, at least at the pleading stage. *See Waits v. Frito-Lay, Inc.*, 978 F.2d 1093 (1992). Accordingly, defendants' motion to dismiss Adobe's claim for relief under the Lanham Act is **DENIED**.

**4.    VENUE.**

Defendants argue that "[t]his Court lacks personal jurisdiction over nonresident defendant Wild Bill's and, therefore, they should be dismissed from this litigation for improper venue" (Br. 14). "Wild Bill's" is not a named defendant in this action nor is he mentioned in the complaint. This appears to be sloppy copying from another brief. The argument is rejected.

**5.    REQUEST FOR AN ORDER TO SHOW CAUSE.**

Defendants claim that the operative complaint is "nearly identical" to one that Adobe filed against a third party in 2010. Defense counsel "urges the Court to issue an [o]rder to [s]how [c]ause as to all the [c]omplaints filed by Adobe to determine the differences, if any, between the [c]omplaints filed in each case" (Br. 14–15). No good cause is provided for why this order should issue. The request is **DENIED**.

**CONCLUSION**

For the reasons stated herein, defendants' motion to dismiss is **DENIED**. The answer is due on **AUGUST 7, 2014**. The July 31 hearing is **VACATED**. If discovery reveals actual facts that conflict with the main factual allegations at the heart of this order, a fresh motion to dismiss for lack of personal jurisdiction may be filed.

**IT IS SO ORDERED.**

Dated: July 28, 2014.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

11